**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
MARK SOLIMAN,

                            Plaintiff,

          - against -

DAIMLER AG, MERCEDES-AMG GMBH,
MERCEDES-BENZ USA, LLC, PROGRESSIVE
NORTHEASTERN INSURANCE COMPANY,

                       Defendants.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-408 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

      Mark Soliman ("Plaintiff" or "Soliman"), appearing *pro se*, filed a Second Amended Complaint ("Complaint") against Daimler AG ("Daimler"), Mercedes-AMG GmbH ("Mercedes"), Mercedes-Benz USA, LLC ("MBUSA"), and Progressive Northeastern Insurance Company ("Progressive") in connection with a car accident involving the Plaintiff. *See* DE 95. Plaintiff was a passenger in the front seat of a Mercedes Benz CL 55 which was involved in a June 2006 head-on collision with a limousine in Nassau County. *See* Second Amended Complaint ("Sec. Am. Compl.") ¶ 11; Defendant Progressive's Mem. of Law ("Def. Mem.") at 2. Of the three people in the vehicle, Planitiff was the only survivor. Sec. Am. Compl. ¶ 13. The vehicle's owner at the time was the wife of the driver. She had insured the vehicle with Defendant Progressive. Def. Mem. at 1-2. Progressive has now moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. *See* DE 125.

This motion has been referred to me by Judge Feuerstein for a Report and Recommendation. Based upon my review of the Complaint, the arguments advanced by both parties in their written submissions, and the applicable law, I respectfully recommend to Judge Feuerstein that Progressive's motion to dismiss be GRANTED.

## II. FACTUAL BACKGROUND

The following background facts come from both the Second Amended Complaint and the accompanying Exhibits. On March 23, 2006, Progressive Direct of Tampa, Florida, issued auto insurance to Lorraine Bonifazio under policy number 15549454-6 for three cars, including the car at issue, a 2003 Mercedes-Benz CL 55 ("CL 55"). Sec. Am. Compl. ¶ 7. This policy, which was underwritten by Progressive, covered the period from April 6, 2006 through October 6, 2006, and provided coverage to both Lorraine and Don Bonifazio. *Id.* and Ex. A. The policy included a provision for liability for bodily injury up to $100,000 per person and $300,000 per accident. The policy also provided $50,000 mandatory personal injury protection and $25,000 for basic economic loss, which resulted in $75,000 in available aggregate no-fault benefits. *Id.* Ex. A.

On June 11, 2006, Soliman was the front seat passenger in the vehicle driven by Don Bonifazio at the time of the collision. *Id.* ¶ 11. Soliman was the sole survivor from the accident which claimed the lives of two others. *Id.* ¶ 13. However, Soliman incurred rear-head injuries including a laceration to his occipital area resulting in 10 staples. *Id.* ¶¶ 17, 29. Soliman also incurred two left femur breaks, damage to the right sides of both knees, breaks to both bones in his left forearm and nose damage. *Id.* ¶ 18. Plaintiff states that as a result of the accident, he was unable to work for three months. *Id.* ¶ 45.

Following the June 11 incident, Attorney Alan Weinreb of Weinreb & Associates filed personal injury and lost wage claims on behalf of Plaintiff. *Id.* ¶ 57. Progressive handled Plaintiff's personal injury and lost wage claim. *Id.* ¶ 20. According to Plaintiff, between August and November 2006, he made several unsuccessful attempts to settle the lost wage claim with Progressive for an approximate value of $14,000. *Id.* ¶ 58. The Complaint asserts that Plaintiff chose not to hold the vehicle owners and "drivers' estates" responsible for the accident. *Id.* ¶ 14. Nevertheless, on November 13, 2006, Plaintiff released the estate of Don Bonifazio and Lorraine Bonifazio for $100,000, which equaled the limit of personal injury coverage available under their Progressive policy. *Id.* ¶ 59. Progressive submitted to Plaintiff's attorney its $100,000 personal injury settlement on January 23, 2007. *Id.* ¶ 61.

Regarding Plaintiff's No-Fault wage claim, on December 8, 2006, Progressive submitted to Plaintiff's counsel a preliminary report and analysis prepared on November 29, 2006 ("November Report") by accountant Joseph R. Levy of Shalik, Morris & Co. *Id.* Ex. H. This report concluded that based on the limited documentation submitted, Plaintiff failed to demonstrate that he sustained any loss of earnings as a result of the accident and Progressive requested further materials from Plaintiff in order to evaluate the claim. *Id.* ¶ 60 and Ex. H. On August 24, 2007, Plaintiff submitted a letter to Progressive responding to the November Report along with a package of documents containing Plaintiff's various business and personal bank statements. Plaintiff sent a copy to his attorney as well. *Id.* ¶ 63. A second accountants' report was prepared by Joseph Levy for Progressive on October 31, 2007 ("October Report"), which Plaintiff apparently did not receive until after Progressive denied his claim for lost wages. *Id.* ¶¶ 66-67. The October Report concluded that despite the voluminous nature of information

submitted, the Plaintiff still failed to provide the majority of records needed to verify his alleged lost earnings. *Id.* ¶ 67 and Ex. L.

Progressive denied Plaintiff's claim for loss of earnings and reimbursement of additional expenses on December 14, 2007. *Id.* ¶ 66 and Ex. K. On November 24, 2008, Plaintiff applied to the New York No-Fault Arbitration Tribunal regarding the denial of his lost wage claim. *Id.* ¶ 67. The first arbitration hearing occurred on April 2, 2009. *Id.* ¶ 76. During a second arbitration hearing, held on May 28, 2009, Progressive presented a third accountants' report dated January 9, 2009 ("January Report"). *Id.* ¶ 73. The conclusions in the January Report mirror those in the two previous reports in that the accountants were unable to determine to what extent, if any, the Plaintiff's absence from work negatively impacted his income. *Id.* Ex. M. On June 2, 2009, Arbitrator Jackie Gallers rendered her arbitration decision denying Plaintiff's lost wage claim for $573,219.66. *Id.* ¶ 73 and Ex. M. Plaintiff subsequently appealed the Arbitration Award to the Master Arbitrator. *Id.* ¶ 78. On November 27, 2009, Master Arbitrator Richard Ancowitz affirmed the Arbitration Award in its entirety. Answer to Sec. Am. Compl. Ex. A

On March 11, 2009, Defendant MBUSA, on behalf of Defendant Daimler, wrote to Plaintiff in response to Plaintiff's January 23, 2009 letter. Sec. Am. Compl. Ex. B. MBUSA advised Plaintiff that since the vehicle at issue was not available for inspection, Defendants were denied an opportunity to analyze its performance in the accident. *Id.* Plaintiff has claimed that the CL 55 contained a design flaw which caused the accident and the injuries Plaintiff sustained as a result of the accident. *Id.* ¶ 33. Again, on March 23, 2009, MBUSA responded to another letter by Plaintiff stating that Plaintiff failed to preserve the vehicle and informing Plaintiff that

4

if suit was filed, MBUSA would raise a spoliation defense. *Id.* ¶ 22 and Ex. F. The Complaint asserts that in December 2006, Progressive acquired the CL 55 from Lorraine Bonifazio and sold it to a salvage yard. *Id.* ¶ 21. However, it was not until April 7, 2009 that Progressive informed Plaintiff that they had sold the CL 55. *Id.* ¶ 71. Plaintiff maintains that Progressive's choosing to sell the CL 55 without any notice to him effectively eliminated Plaintiff's ability to retain legal counsel. *Id.* ¶ 72.

In addition, Plaintiff claims that by September 20, 2007, three other managing members of two development projects involving the Plaintiff, namely Commons at Wickhampark, LLC and Crossings at Bay Meadows, LLC, removed the Plaintiff as a managing member and granted ownership rights to his then attorney, Alan Weinreb. *Id.* ¶ 64. Plaintiff claims that these members somehow gained access to Plaintiff's August 24, 2007 submissions to Progressive. *Id.* Further, Plaintiff states that in March 2008, Alan Weinreb denied being Plaintiff's lost wage claim representative. *Id.* ¶ 62. During 2008, Plaintiff states he "suspected a history" between Progressive and his development associate, Michael Weinreb, as well has his former attorney, Alan Weinreb, that adversely affected Progressive's behavior toward him. *Id.* ¶ 68.

### III. ALLEGATIONS SET FORTH IN THE COMPLAINT

Plaintiff alleges that during the arbitration hearings, Progressive claimed that the remaining coverage available under the Bonifazio policy was $36,000. *Id.* ¶ 77. However, Plaintiff asserts that in accordance with that policy, he has identified $6,793.02 in remaining medical coverage as well as $25,000 for basic economic loss, $2,000 monthly maximum work loss and $25 per day expenses. *Id.* Thus, Plaintiff asserts that Progressive's remaining coverage

5

is actually $106,793.02$ [1] to which Plaintiff has been denied access. *Id.* Plaintiff also claims that Progressive has remained "non-responsive" to their insurance obligation by failing to respond to Mark Soliman's inquiries for access to the remaining medical coverage "for the sake of removing hardware inside his numb left forearm and perversely denying his lost wage claim benefits." *Id.* ¶¶ 39(a), 85(h). In addition, Plaintiff seeks the value of qualified counsel as consideration of Progressive's spoliation of material evidence without notice to him as since such action resulted in his inability to retain counsel. *Id.* ¶ 84(d).

Plaintiff also asserts a claim for Progressive's "harassing behavior patterns" against Plaintiff associated with the misuse of claim files. *Id.* ¶ 80. This claim is in connection with the August 24, 2007 documents Plaintiff submitted to Progressive and Plaintiff's former attorney, Alan Weinreb. *Id.* ¶ 85(a)-(b). According to the Plaintiff, Michael Weinreb was convicted and sentenced in March 2008 in the County Court of Nassau County for offering a false instrument for filing, 1st degree, and was subsequently disbarred in New York and suspended from practice in Florida. Plaintiff states that he tried throughout 2008 to find out whether Progressive filed the complaint against Weinreb in an effort to understand Progressive's "odd behavior pattern" against Plaintiff's lost wage claim. *Id.* ¶¶ 68-69. Lastly, Plaintiff seeks permanent injunctive relief against Progressive for allegedly underwriting an insurance policy served outside the limits of New York – in Tampa, Florida – and served in a manner not consistent with licensure requirements under New York State law. *Id.* ¶ 84.

---

1    Plaintiff's figures appear to be incorrect pursuant to the policy as the "Aggregate No-Fault Benefits Available" is $75,000. *See* Sec. Am. Comp. at Ex. A.

## IV. STANDARD OF REVIEW

Progressive moves for judgment on the pleadings pursuant to Rule 12(c) based on Plaintiff's failure to state a claim. "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts to utilize in deciding a motion to dismiss. District courts are to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

7

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In addition, where, as here, a plaintiff is proceeding *pro* se, the pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp.*, 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141, at *13-14 (S.D.N.Y. Jun. 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The pleadings must be "interpreted to raise the strongest arguments they suggest." *Bellamy*, 2009 U.S. Dist. LEXIS 54141, at *14 (quoting *Burgos v. Hopkins*, 14 F.2d 797, 790 (2d Cir. 1994)).

V.  DISCUSSION

Generally speaking, the Court finds Progressive's characterization of Plaintiff's claims as found in Progressive's memorandum of law to be accurate. Specifically, Progressive describes the claims as follows:

- Progressive caused spoliation of evidence by selling the insured's Mercedes Benz to a salvage yard, thus making it impossible for plaintiff to retain an attorney for his action against Mercedes Benz;
- Progressive denied plaintiff's claim for lost wages as a result of the accident;
- Progressive remained non-responsive to plaintiff's inquiries regarding accessing the remaining $6,793.02 worth of medical expense coverage in plaintiff's effort to arrange the removal of hardware still inside plaintiff's body; and
- Progressive had underwritten an insurance policy served from Tampa Florida without authority.

*See* Def. Mem. at 2. In his response to Progressive's motion, Plaintiff does not present any

challenges to the characterization of the four claims identified by Progressive and provides little if any argument (and no case law) regarding the arguments for dismissal raised by Progressive. *See* Response to Progressive Northeastern Insurance Co.'s Mem. of Law ("Pl.'s Resp."), at 3-5. Instead, Plaintiff argues that Progressive failed to address his claims involving, among other things, the misuse of his August 24, 2007 submissions and the damages connected to the legal expenses associated with the misuse of the lost wage claim transmittal – all of which Plaintiff asserts are not the subjects of his no-fault claim. *Id.* at 3-4. Accordingly, the Court will address each of the four claims identified by Progressive and the additional claims asserted by Plaintiff separately.

### A. Spoliation of Evidence

In the Complaint, Plaintiff seeks damages from Progressive based upon Progressive having sold the CL 55 to a salvage yard without providing notice to him. Plaintiff maintains that this conduct resulted in him being unable to retain counsel and to facilitate resolving his claims against the Defendants. Plaintiff affirms this assertion in his response papers when he states that he seeks the "value of not being able to retain qualified professional representation in consideration of Progressive's spoliation of material evidence without notice to a sole survivor." Pl.'s Resp. at 3. Progressive argues that, in addition to the fact that it had no duty to Plaintiff to preserve the vehicle since he was not the owner or insured, New York does not recognize spoliation of evidence to be a cognizable tort action. *See* Def.'s Mem. at 5.

The New York Court of Appeals in *Ortega v. City of New York*, 9 N.Y.3d 69 (2007), held that New York does not recognize the tort of third-party negligent spoliation of evidence.

*Ortega,* 9 N.Y.3d at 69. In *Ortega*, after plaintiff's 1987 Ford minivan burst into flames causing the occupants to suffer severe burns, the New York City police officers who were investigating the accident contacted Ridge Transport Systems to remove the vehicle to the New York City Police Department's College Point Auto Pound (the "Pound"). *Ortega*, 9 N.Y.3d at 73. Although the co-plaintiff obtained a preservation order precluding the destruction of the vehicle thus establishing a duty on the City of New York to preserve the minivan – the Pound followed ordinary procedures for the disposition of the vehicle which was crushed for scrap metal. *Id.* at 73-74. Thus, the plaintiffs brought a negligent spoliation claim against the City of New York alleging they were now precluded from recovering from any of the actual tortfeasors responsible. *Id.* Plaintiffs claimed that an examination of the vehicle would have revealed a design defect or manufacturing defect. *Id.* at 82. The Court of Appeals, while highlighting the various remedial options provided by New York courts under CPLR 3126 in circumstances where destruction of evidence occurs between *parties*, it recognized the same cannot be true to *non-parties* who destroy evidence. *Id.* at 76-79. Indeed, the Court of Appeals reasoned:

> As the present case demonstrates, there will be unfortunate instances where third parties with a duty to preserve evidence but not connection to the underlying lawsuit will negligently breach that duty, presenting a situation where discovery sanctions are inadequate to address the spoliation victim's loss.

*Id.* at 80. Notwithstanding such circumstances, the Court of Appeals concluded that "we are not convinced that existing New York remedies are inadequate to deter spoliation or appropriately compensate its victims." *Id.* at 79. In doing so, the Court of Appeals joined the majority of jurisdictions in declining to recognize spoliation of evidence as an independent tort claim. *Id.* at 82.

In the present action, Plaintiff seeks to hold Progressive accountable because the CL 55 was unavailable for inspection. Had that not been the case, the Plaintiff asserts, the CL 55 would have shown the design defect. However, Defendant Progressive did not owe a duty to the Plaintiff since he was not the policyholder on the insurance covering the CL 55 and he did not obtain a preservation order like the injured non-owner plaintiff in *Ortega*. Thus, the facts of this case align more closely with *MetLife Auto & Home v. Joe Basil Chevrolet Inc.,* 1 N.Y.3d 478 (2004), in which the Court of Appeals declined to recognize a spoliation tort where "no duty to preserve the vehicle" was present, "no relationship existed . . . that would give rise to such a duty" and "[plaintiff] made no effort to preserve the evidence by court order or written agreement." *Metlife*, 1 N.Y.3d at 484. Even assuming for the sake of argument that Progressive somehow owed a duty to Plaintiff to preserve the vehicle, the holding in *Ortega* clearly states that no independent tort claim for spoliation is cognizable in New York. *See Ortega,* 9 N.Y.3d at 82; *see also Penberg v. Healthbridge Mgmt.,* No. 08-CV-1534, 2010 WL 2787616, at *11, (E.D.N.Y. Mar. 29, 2010) (concluding that even first-party spoliation is not a cognizable claim under New York law). Accordingly, I respectfully recommend to Judge Feuerstein that Plaintiff's claim against Progressive for spoliation of evidence and the alleged resulting damages be dismissed with prejudice.

### B. Lost Wage Claim

One of the claims Plaintiff puts forward against Progressive is for "perversely denying his lost wage claim benefits." Sec. Am. Compl. ¶ 85(h). Progressive argues that Plaintiff is collaterally estopped from raising this claim again since it was previously decided in arbitration.

*See* Def.'s Mem. at 6-7. Plaintiff, however, claims that the damages he seeks in this action are "not subjects of Plaintiff's no-fault claim." *See* Pl.'s Resp. at 4. Despite the uncertainty flowing from what claims Plaintiff actually brings against Progressive, to the extent Plaintiff is seeking damages pursuant to any variation of his lost wages, this Court finds Plaintiff to be collaterally estopped from doing so.

In federal diversity cases, courts apply state law to determine whether collateral estoppel applies to a certain set of facts. *See Ritchie v. Landau*, 475 F.2d 151, 154 (2d Cir. 1973). "Under New York law, '[t]he doctrine of collateral estoppel [bars] a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Khandhar v. Elfenbein, M.D.,* 943 F.2d 244, 247 (2d Cir. 1991) (quoting *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588 (1985)) (internal quotation and citations omitted). Thus, two requirements must be met: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issues must have had a full and fair opportunity to contest the prior determination." *Kaufman*, 65 N.Y.2d at 455, 492 N.Y.S.2d at 588. Further, the Court notes that it is settled law that collateral estoppel is applicable to issues resolved by an earlier arbitration. *See Rembrandt Indus. Inc. v. Hodges Int'l, Inc.,* 38 N.Y.2d 502, 504, 381 N.Y.S.2d 451, 452 (1976)

Regarding the first requirement, the issue of lost wages was the basis for Plaintiff's initiation of the arbitration proceeding. This issue was decided when the arbitrator determined that Plaintiff could not substantiate his alleged lost wages claim. Further, Plaintiff had a full and fair opportunity to contest this arbitration. Not only did Plaintiff submit documentary evidence,

12

but he also presented his claim during arbitration hearings. Even after the Arbitrator denied Plaintiff's claim for lost wages, he appealed to a Master Arbitrator who ultimately affirmed the original Arbitrator's findings. Thus, the Court finds that the requirements for claim preclusion have been satisfied here. *See Martin v. Geico Direct Ins.,* 31 A.D.3d 505, N.Y.S.2d 265 (2006) (dismissing action which raised same issues involving no-fault benefits in a prior arbitration proceeding); *Lobel v. Allstate Ins. Co.,* 269 A.D.2d 502, N.Y.S.2d 488 (2d Dep't 2000) (dismissing Plaintiff's cause of action to recover no-fault benefits since this issue was decided in a prior arbitration proceeding). Accordingly, to the extent Plaintiff asserts a cause of action involving lost wages, I respectfully recommend that such cause of action be dismissed with prejudice.

### C. Remaining Medical Expense Coverage

It is clear from Plaintiff's Complaint that he seeks $6,793.02 of remaining medical expense coverage from the policy at issue. Progressive, without denying that such coverage remains, nevertheless argues that since Plaintiff elected to arbitrate a no-fault payment dispute, he waived his right to commence an action to litigate subsequent disputes over no-fault benefits. *See* Def. Mem. at 7.

The New York Court of Appeals addressed this issue in *Roggio v. Nationwide Mut. Ins. Co.,* 66 N.Y.2d 260, 496 N.Y.S.2d 404 (1985). In *Roggio*, after Nationwide denied certain medical expense claims submitted by plaintiff, the plaintiff opted to arbitrate the denial. *Roggio,* 66 N.Y.2d at 261. After an arbitrator found that most of the services rendered were unnecessary, the plaintiff appealed. *Id.* In addition, after a subsequent medical expense claim was denied by

Nationwide, plaintiff sued the carrier in state court over this particular claim. *Id.* The Court of Appeals, in dismissing plaintiff's action, reasoned that the "legislative objective in enacting the No-Fault Law was to reduce significantly the burden of automobile personal injury litigation on the courts." *Id.* at 264. The Court further reasoned that "[i]n other settings, claimants would not be permitted to flit between forums for the resolution of issues or items of damages arising from a single injury."

In the present action, Plaintiff elected to arbitrate Progressive's denial of his claim for lost wages. As Plaintiff voluntarily commenced an arbitration proceeding to recover no-fault benefits, all subsequent issues regarding such no-fault benefits must be submitted to arbitration. *See Cortez v. Countrywide Ins. Co.,* 17 A.D.3d 508, 509 (2d Dep't 2005) ("By electing to arbitrate, the plaintiff waived his right to commence an action to litigate subsequent disputes over no-fault benefits to which he was allegedly entitled as a result of that accident") (citations omitted). As such, I respectfully recommend that Plaintiff's claim regarding the remaining medical expense coverage be dismissed. However, the Court notes that this recommendation does not preclude Plaintiff from seeking such no-fault benefits in the proper forum, which in this instance would be arbitration.

### D. Injunctive Relief

In the Complaint, Plaintiff requests that the Court award him "professional misconduct hardships associated with Progressive's harassing self-contradictory ungoverned behavior and underwriting of an insurance policy served from Tampa, Florida without authority." Sec. Am. Compl. ¶ 85(f). Progressive first argues that it is licensed to sell insurance in New York State.

14

Progressive also alleges that even if it was not licensed to sell insurance in New York, Plaintiff may not bring an action against it for this reason. *See* Def. Mem. at 8-9.

As an initial matter, Progressive has provided the Court with a copy of the New York State Department of Insurance record of license for Progressive Direct. *See* Def.'s Mem. at Ex. A.[2] Based on this Department of Insurance public document, the Court can confirm that Plaintiff is, in fact, licensed to sell insurance in New York State. However, even assuming Progressive was not licensed to sell insurance in New York, no private right of action exists in these circumstances under New York Insurance Law. Section 1102(a) sets forth the penalties for selling insurance without a valid license:

> No person, firm, association, corporation or joint-stock company shall do an insurance business in this state unless authorized by a license in force pursuant to the provisions of this chapter, or exempted by the provisions of this chapter from such requirement. Any person, firm, association, corporation or joint-stock company which transacts any insurance business in this state while not authorized to do so by a licence issued and in force pursuant to this chapter, or exempted by this chapter from the requirement of having such license, shall, in addition to any other penalty provided by law, forfeit to the people of this state the sum of one thousand dollars for the first violation and two thousand five hundred dollars for each subsequent violation.

N.Y. Ins. Law § 1102(a). Further, Section 109(d) states that "[t]he superintendent may maintain a civil action in the name of the people of the state to recover a judgment for a money penalty imposed by law for the violation of any provision of this chapter." N.Y. Ins. Law § 109(d).

---

2     A court may take judicial notice of public documents. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Awan v. Ashcroft*, No. 09-CV-1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010) ("On a motion to dismiss, courts may take judicial notice of public records").

Taking these sections together, an insurance company's failure to comply with the licensing scheme of New York "subjects the insurer to the available statutory penalties and sanctions that may be imposed by the *Superintendent of Insurance*." *Putnam Realty Corp. v. Chubb Custom Ins. Co.,* 14 A.D.3d 310, 312 (1st Dep't 2005) (emphasis added); *see also Jim Mazz Auto, Inc. v. Progressive Casualty Insurance Co.,* Nos. 08-CV-494, 08-CV-541, 08-CV-566, 08-CV-583, 2009 WL 910969, at *1 (W.D.N.Y. Mar. 31, 2009) ("The plain language of Section 109(d) demonstrates the legislative intent to have the Superintendent of Insurance represent the public when insurance companies violate the Insurance Law."); *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.,* No. 06 CIV. 4624, 2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) (concluding that "to allow [defendant] a private cause of action would be incompatible with the clearly defined procedural mechanism provided by the legislature"). Indeed,

> [t]he only sections of the Insurance Law that create a private right of action are those that the legislature selected deliberately. There is no need to read a private right of action into the Insurance Law when there is abundant evidence that the legislature chose consciously when and when not to create one.

*Jim Mazz Auto, Inc.,* 2009 WL 910969, at *1. Accordingly, Plaintiff's claim directed to Progressive's alleged underwriting without the requisite authority fails.

### E.  Remaining Claims

Plaintiff alleges that Defendant's motion does not address those damages within the Complaint spawned from the "misuse of an August 24, 2007 lost wage claim transmittal," "professional harassment hardships associated with an alleged former history with Michael Weinreb" and other "professional misconduct." *See* Pl.'s Resp. at 3. Progressive interpreted

16

Plaintiff's position as a response to its collateral estoppel argument. *See* Def. Mem. in Reply to Pl.'s Opp. To Progressive's Mot. to Dismiss ("Def. Reply"), at 1. Although the Court liberally construes these allegations as independent claims, the Court nonetheless finds such claims to be without merit.

Regarding the August 24, 2007 lost wage claim transmittal, nowhere in the Complaint is there any indication of wrongdoing by Progressive in handling this transmittal. The documents requested were at the direction of Progressive's accountant. Plaintiff admits in the Complaint that "Mark Soliman submitted a 12-lb response package with a copy to Alan Weinreb per Progressive's chain of correspondence." Sec. Am. Compl. ¶ 63. Clearly there was no error in Progressive's directive that a copy of the documents go to Plaintiff's own counsel. Further, Plaintiff does not point to any involvement of Progressive regarding the allegation that "[t]he managing members demonstrated access to Mark Soliman's August 24, 2007 package to Progressive."[3] *Id.* ¶ 64. Even accepting this allegation as true, which the Court must at this stage, the Complaint offers no support for what Plaintiff appears to be inferring, namely that Progressive somehow allowed access to his submissions to Progressive to the managing

---

3    Plaintiff has also asserted claims for damages regarding his business financial losses. Sec. Am. Compl. ¶¶ 40-54. According to Plaintiff, he is 100% owner, found and president of MARSOL Development Corp./Homes by MARSOL, Inc., a Florida state building contractor. Through MARSOL, Plaintiff states that he is a 33% owner and managing member of Crossings at Port Malabar, LLC, a 25% owner and managing member of both Crossings at Sabal Grove, LLC and Commons at Summerbrook LLC, a 21.75% owner and managing member of both Crossings at Bay Meadows, LLC and Commons at Wickhampark, LLC, and a 50% partner of J.M.S. Construction and Design Build, LLC. Plaintiff claims that his injuries in June 2006 adversely impacted his business projects and that by September 20, 2007, the three other managing members of Commons at Wickhampark, LLC and Crossings at Bay Meadows LLC had removed him as a managing member and granted ownership rights to Alan Weinreb, Esq. *Id.* ¶ 64. As such, Plaintiff contends that the managing members had been able to access his exchanges with Progressive and manipulated that information. *Id.*

members.

Additionally, Plaintiff fails to assert a claim against Progressive in connection with any alleged "history" with Michael Weinreb. The mere fact that a lawsuit was filed against Michael Weinreb, which may have been brought on behalf of insurance companies including Progressive, does not evidence any history between the two parties that would adversely affect Progressive's behavior toward the Plaintiff. Likewise, even if such a "history" existed between the two parties, the Complaint fails to aver how Plaintiff was adversely affected. Lastly, a review of the Complaint fails to show any other harassing or professional misconduct by Progressive. Filing varying motions and zealously defending its business does not constitute harassing or wrongful conduct. Therefore, even construing the Complaint liberally as the Court must with a *pro se* pleading, the Court finds that Plaintiff's remaining claims also fail. This Court believes that any potential amendment to the Complaint regarding claims against Progressive would be futile and recommends that the Complaint be dismissed with prejudice as to this Defendant. *See Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003).

## VI.    CONCLUSION

For the reasons discussed above, I respectfully recommend to Judge Feuerstein that Defendant Progressive's motion to dismiss the Complaint be GRANTED, with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such

objections shall be filed with the Clerk of the Court via ECF, **except in the case of a party proceeding *pro se*.  *Pro Se* Plaintiff Mark Soliman  must file his objections in writing with the Clerk of the Court within the prescribed time period noted above.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra J. Feuerstein, and to my chambers as well.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).**

Counsel for Defendant Progressive is directed to serve a copy of this Report and Recommendation upon the Plaintiff *pro se* forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
February 9, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge