FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ SEP 29 2011 ★
LONG ISLAND OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
MARK SOLIMAN,

                Plaintiff,

     - against -

DAIMLER AG, MERCEDES-AMG GMBH,
MERCEDES-BENZ USA, LLC,
PROGRESSIVE NORTHEASTERN
INSURANCE COMPANY,

                Defendants.
----------------------------------------------------X

**ORDER**
10-CV-408 (SJF) (AKT)

FEUERSTEIN, J.

I.    Introduction

On June 8, 2009, *pro se* plaintiff Mark Soliman commenced this action against Daimler AG, Mercedes-AMG GmbH, Mercedes-Benz USA, LLC (collectively, "the Mercedes defendants"), and Progressive Northeastern Insurance Company ("Progressive") to recover damages for injuries sustained in an automobile accident in 2006. The Mercedes defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docket No. 169].

On August 10, 2011, pursuant to a referral, Magistrate Judge A. Kathleen Tomlinson issued a Report and Recommendation (the "Report") recommending that the Mercedes defendants' motion be granted. [Docket No. 222]. On August 29, 2011, plaintiff filed objections

1

to Judge Tomlinson's Report. [Docket No. 224]. The Mercedes defendants filed a response to plaintiff's objections on September 9, 2011. [Docket No. 225].

To the extent that plaintiff has objected to the Report and Recommendation, the Court has performed a de novo review of the Report and the record upon which it is based. For the reasons that follow, the Court adopts Judge Tomlinson's recommendation and grants the Mercedes defendants' motion for summary judgment.

II.     Background

In June 2006, plaintiff was injured in a head-on collision between two automobiles in Nassau County. Report at 2. At the time of the accident, plaintiff was a passenger in a 2003 Mercedes Benz CL 55 (the "CL 55"). Id. Both the driver of the CL 55 and its other passenger were fatally injured in the accident. Id. Plaintiff suffered fractures in his leg and forearm, a laceration to his head, a concussion, and an injury to his nose. Id. at 2-3. The vehicle was insured by Progressive.[1] Report and Recommendation dated Feb. 9, 2011 [Docket No. 215], at 1.

Plaintiff argues that the accident was caused by a design defect in the car's engine or transmission, which caused it to "lunge" into oncoming traffic. Report at 3, 6; Second Affidavit of Mark Patrick Soliman ("Second Soliman Aff.") [Docket No. 179], at ¶¶ 17-18; Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Br.") [Docket No. 178], at 9-10. Plaintiff

---

[1] On February 9, 2011, Judge Tomlinson issued a Report and Recommendation recommending that Progressive's motion to dismiss the complaint as to it be granted. [Docket No. 215]. On February 24, 2011, I adopted Judge Tomlinson's recommendation, and Progressive's motion was granted. [Docket No. 216]. Plaintiff's motion for reconsideration was denied on April 27, 2011. [Docket No. 220].

2

also alleges defects in the design of the seatbelt, seat back, and airbags in the CL 55. Report at 13, 21; Pl. Br. 11-16.

III. Discussion

    A. Standard of Review

        1. Review of a Magistrate's Report and Recommendation

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." Frankel v. City of New York, Nos. 06 Civ. 5450 (LTS)(DFE), 07 Civ. 3436 (LTS)(DFE), 2009 WL 465645, at *2 (S.D.N.Y. Feb. 29, 2009). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150 (1985). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

3

2. Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. *

* *. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or 'upon the mere allegations or denials of the [nonmoving] party's pleading,' Fed.R.Civ.P. 56(e)." Id. (citations omitted).

B.  Plaintiff's Objections to the Report and Recommendation

Plaintiff objects to the Report and Recommendation, arguing principally that: (1) he is qualified to render an expert opinion as to the design defects and to offer alternative designs, Plaintiff's Objections to Report and Recommendation ("Pl. Obj.") at 4, 8-9; (2) design alternatives are "obvious to and understandable by a layperson," id. at 4-5, (3) the seatbelt defect claim is not preempted by federal law, id. at 5-6; and (4) the Report ignores certain evidence, including "the Case Report Photographs illustrating failed passenger's seat back, and Mark Soliman's medical records" as proof of a design defect, id. at 7.[2]

---

[2] As an initial matter, the Court notes that plaintiff's objections to the Report are untimely. Plaintiff was explicitly ordered to file any objections within fourteen (14) days of service of the Report. Report at 23; see also Fed. R. Civ. P. 72. An affidavit of service filed by the Mercedes defendants states that plaintiff was served on August 11, 2011. [Docket No. 223]. Nevertheless, plaintiff's objections were not filed until August 29, 2011. [Docket No. 224]. Given the Second Circuit's strong preference for resolving cases on their merits, City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011), the Court will overlook this failure and address plaintiff's objections.

C.  Analysis

    1.  Failure to Provide Expert Testimony Regarding Alleged Design Defects.

Plaintiff alleges various defects in the design of the CL 55, including in its engine, transmission, seatbelt, seat back, and airbags. Report at 7, 13, 21. "Under New York law, a plaintiff asserting a claim for defective design must show that (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." Rupolo v. Oshkosh Truck Corp., 749 F. Supp. 2d 31, 42 (E.D.N.Y. 2010).

Since plaintiff is alleging the existence of complex design defects, he must provide expert testimony as to the feasibility and efficacy of alternative designs. See, e.g., Maxwell v. Howmedica Osteonics Corp., 713 F.Supp.2d 84, 91 (N.D.N.Y. 2010); Guarascio v. Drake Assocs., Inc., 582 F.Supp.2d 459, 463 (S.D.N.Y. 2008) ("New York courts uniformly rule that competent, non-conclusory expert testimony is needed in cases involving more complex design issues."); Rypkema v. Time Mfg. Co., 263 F.Supp.2d 687, 692 (S.D.N.Y. 2003). If plaintiff does not provide expert testimony regarding the alleged design defect, he must establish that "a reasonable alternative design is both obvious to, and understandable by, a layperson." Guarascio, 582 F.Supp.2d at 463.

Although plaintiff contends that "[i]t does not take an expert to explain, understand or solve" what he terms a "relatively simple design flaw," Pl. Obj. at 4, the Court does not agree

that the alleged design flaws are "simple," or that they would be obvious to and understandable by a layperson. Thus, expert testimony is required. See, e.g., Guarascio, 582 F.Supp.2d at 464; Tiner v. Gen. Motors Corp., 909 F. Supp. 112, 117 (N.D.N.Y. 1995) ("Matters such as the tolerance a seat belt should allow for movement after a collision are not within the ken of the average juror."); Fitzpatrick v. Currie, 52 A.D.3d 1089, 1092, 861 N.Y.S.2d 431 (3d Dep't 2008) (in products liability case, "the complex issues involved in the design and operation of an air bag make expert proof imperative").

Although plaintiff submits various affidavits from himself, in which he opines on the causes of the accident and his injuries, he does not offer an expert report or expert testimony in support of his claims. See Third Affidavit of Mark Patrick Soliman ("Third Soliman Aff.") [Docket No. 180].

A witness may qualify as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. In determining whether an individual qualifies as an expert, "[a] court should look at the totality of the witness' qualifications." Atl. Specialty Ins. Co. v. Gold Coast Devs., Inc., No. 05-cv-4863, 2008 WL 974411, at *6 (E.D.N.Y. Apr. 8, 2008).

There is no evidence that plaintiff has the knowledge, skill, experience, training or education that would qualify him as an expert with respect to any of the issues in this case. His bachelor's degree in environmental engineering, Pl. Obj. at 9, does not qualify him to render an expert opinion as to alternative designs for automobile engines, transmissions, seatbelts, or airbags. Although plaintiff states that he is experienced in designing "groundwater remediation systems" and developing "infrastructure projects," Third Soliman Aff. at ¶ 1, he lacks any experience in the automotive industry or in product analysis. Report at 11. Therefore, he is not

qualified to serve as an "expert" in this case. See, e.g., Fernandez v. Central Mine Equip. Co., 670 F.Supp.2d 178, 183-84 (E.D.N.Y. 2009) (mechanical engineer not qualified to serve as expert in fields of geotechnical or water well drilling); Trumps v. Toastmaster, Inc., 969 F. Supp. 247, 251-52 (S.D.N.Y. 1997).

Plaintiff further states that he "has every intention to call upon engineering experts more qualified than himself" at trial, but "[t]o introduce them to this dialogue at this stage is to insult them and their time." Pl. Obj. at 9. However, "a party intending to call a witness must disclose the expert's identity to the other parties prior to trial." Rupolo, 749 F.Supp.2d at 37 (citing Fed. R. Civ. P. 26(a)(2)(A)). Moreover, an expert retained to provide expert testimony in a case must provide a "written report . . . prepared and signed by the witness . . . ." Id. at 38 (citing Fed. R. Civ. P. 26(a)(2)(B)). Plaintiff has not identified any expert to testify on his behalf, submit an expert report, or to be deposed by defendants. The anticipated testimony of unidentified "experts" is insufficient to defeat a motion for summary judgment.

As plaintiff has failed to raise a triable issue of fact as to the existence of any design defect in the CL 55, the Court must grant summary judgment to the Mercedes defendants with respect to these claims. See Tuosto v. Philip Morris USA, Inc., 05-cv-9384, 2007 WL 2398507, at *12 (S.D.N.Y. Aug. 21, 2007) (dismissing improper design claim for failure to proffer expert opinion).

2. Preemption of Seatbelt System Claim.

Although plaintiff's failure to offer an expert opinion is fatal to his claim that the CL 55

8

contained a defective seatbelt system, this claim is also preempted by federal law.

Plaintiff claims that the integrated seatbelt system in the vehicle was defective, arguing that the defect permitted the "front seat back's structural capacity" to be "overpowered," which "result[ed] in a passenger seat back [to] ben[d] forward by 30-degrees without imposing a notable shoulder injury to the Plaintiff." Hannigan Decl. Ex. H, at 3; see also Pl. Br. 11-13. Plaintiff argues that the seatbelt should have been attached to the vehicle's frame, rather than to the top of the seat itself. See Third Soliman Aff., ¶ 12; Second Amended Complaint at ¶ 15; Report at 18.

The Court agrees with Judge Tomlinson's finding that this claim is preempted by Federal Motor Vehicle Safety Standard ("FMVSS") 208, which requires passenger cars manufactured on or after September 1, 1996 to have a "Type 2 seat belt assembly that conforms to Standard No. 209 and S7.1 through S7.3 of this standard." Report at 15 (citing 49 C.F.R. § 571.208.S4.1.5.1(a)(3)).[3] FMVSS 208 permits manufacturers to anchor the seat belt to the seat itself. See 49 C.F.R. § 571.208.S7.1.2.[4] Therefore, a state tort law imposing a duty to anchor the seat belt to the vehicle's frame is preempted because it "would [] present[] an obstacle to the variety and mix of devices that the federal regulation sought." Geier v. Am. Honda Motor Co., 529 U.S. 861, 881 (2000); see also Griffith v. Gen. Motors Co., 303 F.3d 1276, 1282 (11th Cir. 2002); Hurley v. Motor Coach Indus., Inc., 222 F.3d 377, 383 (7th Cir. 2000). In other words, a

---

[3] The CL 55 in question used a Type 2 seat belt assembly, which is a "combination of pelvic and upper torso restraints." Report at 15 (citing 49 C.F.R. § 571.209).

[4] As Judge Tomlison pointed out, several other motor vehicle safety standards reference a seat belt assembly in which the seat belt is anchored to the seat itself. Report at 15-16 (citing 49 C.F.R. §§ 571.210.S4.3.1.1-1.3; 571.207.S4.2(c)).

state tort suit on these grounds "would [] deprive[] the manufacturers of the choice that the federal regulation had assured them." Williamson v. Mazda Motor of Am., Inc., 131 S.Ct. 1131, 1134 (2011) (citing Geier, 529 U.S. at 874-75).

The Court further agrees that providing manufacturers with the option to anchor the seatbelt to the seat itself was a "significant objective" of the regulation. See Williamson, 131 S.Ct. 1131. Notably, the DOT stated that the purpose of a 1994 amendment to FMVSS 208 was to require that "Type 2 safety belts . . . either be integrated with the vehicle seat or be equipped with a means of adjustability to improve the fit and increase the comfort of the belt for a variety of different sized occupants." 59 Fed. Reg. 39472 (1994). The rationale behind the amendment was to "encourage the correct use of safety belts and [] increase the overall safety belt usage rate." Id. Because the option of integrating the safety belt with the vehicle seat was intended to promote the correct use of seat belts (and thus public safety), providing this option was a "significant objective" of the regulation, and plaintiff's claim is preempted by federal law. See Williamson, 131 S.Ct. at 1139.

Plaintiff objects that this claim is "not preempted by National Traffic and Motor Vehicle Safety Act, pursuant to Act's saving clause, which contemplated that manufacturers could be held liable at common law for failure to exceed minimum standards for authorized restrain systems when their decisions were unreasonable." Pl. Obj. at 6 (citing King v. Ford Motor Co., 209 F.3d 886 (6th Cir. 2000)). Although the Safety Act's savings clause does provide that "compliance with an FMVSS does not shield a manufacturer from liability at common law," King, 209 F.3d at 892, plaintiff has offered no evidence that the Mercedes defendants' decision to anchor the seatbelt to the seat itself was "unreasonable."

3. Failure to Consider Evidence.

Plaintiff also objects that the Report failed to consider "the Case Report Photographs illustrating failed passenger's seat back, and Mark Soliman's medical records." Pl. Obj. at 7. The Report makes multiple references to this evidence, and there is no evidence that Judge Tomlinson failed to consider it. See, e.g., Report at 3, 20, 21, 22. In any event, the Court finds that the photographs and medical records fail to raise any triable issues of fact.

IV. Conclusion

For the foregoing reasons, the Mercedes defendants' motion for summary judgment is granted, and the Clerk of Court is directed to close this case. In accordance with Rule 77(d) of the Federal Rules of Civil Procedure, the Clerk of Court shall serve a copy of this order with notice of entry upon all parties, including mailing a copy of this order to the *pro se* plaintiff at his last known address, and record such service on the docket.

**SO ORDERED.**

/ Sandra J. Feuerstein
United States District Judge

Dated: September 29, 2011
Central Islip, New York